CAUSE NO. ________
IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

DEC 10 2018

David J. Bradley, Clerk of Court

Wendy N. Duong, Plaintiff,
v.
Monique (Bach Hac) Nguyen
& Thao N. Luong
& Facebook, Inc.
& other Facebook commenters, John Doe and Jane Doe participants, including one identified as "Na Trinh,"all using Facebook pseudonyms

# Plaintiff's Original Complaint for Damages and Injunctive Relief, and Application for Temporary Restraining Order

Plaintiff, Wendy N. Duong, files this Original Complaint for Damages and Injunctive Relief, and Application for Temporary Restraining Order.

## I. PARTIES

1. Plaintiff Wendy N. Duong is a resident of Harris and Brazoria Counties, Texas. Plaintiff is a private citizen. Plaintiff has been an attorney licensed by the State of Texas since 1984, and has never been disbarred or disciplined. From the school year 2001-2002 to 2010-11, Plaintiff was a college professor and full time member of a law faculty.
2. Upon information and belief, Defendant Monique (Bach Hac) Nguyen ("Nguyen") is a resident of Fort Bend County, Texas, who may be served at 11015 Bright Gardens Drive, Richmond TX 77406-3888, or wherever she may be found.
3. Thao N. Luong ("Luong") is a resident of Orange County, California, who may be served at 11571 Dorada Ave, Garden Grove, CA, or wherever she may be found. Independent of her conduct that gave rise to this lawsuit, Luong purposely has contact with the State of Texas and engaged in activities that affect residents and the interest of the State of Texas. Nguyen and Luong together are referenced as the "individual Defendants."
4. Upon information and belief, Facebook, Inc. ("FB") is a Delaware corporation, doing business worldwide, which can be served at its registered office or headquarters in the United States.

## II. DISCOVERY

Discovery will be conducted in accordance with the Federal Rules of Civil Procedure.

## III. VENUE AND JURISDICTION

**5.** Venue is proper in Harris County and/or Brazoria County, Texas where damage occurred and continues to occur, and where Plaintiff was injured and continues to be injured. Damage and injuries occurred in those counties and worldwide due to FB channel of internet distribution.

**6.** Jurisdiction is based on diversity of citizenship, and the amount in controversy exceeds the *minimum jurisdictional amount required by law.*

## IV. FACTUAL BACKGROUND

**7.** At different times, Defendants sought to gain access, friendship, support, and affiliation from Plaintiff for financial and/or social gains, as well as for access to Plaintiff's life, private information and her view relating to the Vietnamese American community and its anti-communist politics. When these immediate purposes were not attained, Defendants used FB to launch and conduct a defamatory, internet-based harassment scheme against Plaintiff to discredit her in front of her community, to the injury of her social standing, professional reputation, person and family. Defendants also admitted to slander of Plaintiff via phone and FB internet communication facility.

8. In or about 2015, Defendant Monique Nguyen began seeking the company of Plaintiff with the following intent:

a. To become employee as office manager for Plaintiff's law office. Nguyen has no training in any law-related field.

b. To become a home care worker, and to supply workers for servicing Plaintiff's disabled and aging parents. Nguyen did apply for such position, and referred one worker for such position. Nguyen was not hired, and the worker she referred committed misconduct, caused harm, made unreasonable demand, ultimately just walked out of the job without advanced notice, and hence was discharged.

c. To become Plaintiff's realtor in her search for home and office. Nguyen used the name of another agent/broker to conducting this real estate-search service for Plaintiff.

d. To become Plaintiff's caterer of Vietnamese food.

e. To offer other services such as financial and home-related services. Upon information and belief, Nguyen has no training or license in any such financial advisory field.

f. To obtain social affiliation from Plaintiff and, hence, to gain access to confidential and private information regarding Plaintiff. Among the conversations that Nguyen solicited were issues of the Vietnamese American community and its anti-communism politics.

g. None of Nguyen's goals regarding services to Plaintiff was achieved

9. As of the later part of 2016, Plaintiff terminated all contacts with Nguyen based on issues of integrity and honesty, food authenticity, and worker's reliability, and commitment to the home care of Plaintiff's parents.

10. In or about 2016, via FB, Defendant Thao N. Luong pursued affiliation, mentorship, sympathy, friendship, and donation from Plaintiff, representing that she sang, played piano, composed music and painted. Luong fished for private, family, and career information from Plaintiff by initiating Messenger on FB. Luong also represented that she was a victim of domestic abuse, a person with disability and mental deficiency, yet a child prodigy in Vietnam, a former medical doctor or dentist or surgeon in Vietnam who could not continue her profession in the U.S. due to accidents and health impairment.

11. In or about September 2016, Plaintiff prepared for a trip to Southern California to attend a reunion banquet. Around that time, Luong approached Plaintiff to show off Luong's musical composition. Plaintiff agreed to meet Luong in southern California to test sing Luong's song and other classical arias.

12. In California, Plaintiff allowed Luong to visit her relatives' or friends' residences for the purpose of test singing. From such experience, Plaintiff discovered that:

    a. Luong could not read music; she explained that her illness had wiped out her music reading ability.
    b. Luong did not understand the art and principles of accompaniment for vocalists to perform in semi-classical style. Nor did Luong understand vocal ranges.
    c. Luong did not write songs via musical notations. She relied on computer software used by her friends and acquaintances.
    d. Luong was not an impoverished or disabled artist, except that she used certain cushions in the driver's seat of her car. Luong was a homemaker with a child, allegedly a working husband, a car and a residence.
    e. Luong did not know classical music or operatic arias.
    f. Because of these deficiencies, Plaintiff refused to practice singing with Luong as accompanist. Yet, Luong refused to leave and asked for meals. Plaintiff and her Californian relatives took Luong out to eat with the family.
    g. Luong offered Plaintiff rides, segregating Plaintiff from her relatives, and elected to stop by Luong's residence, attempting to keep Plaintiff there. Plaintiff asked to leave due to

flight schedule. Luong then took Plaintiff to the residence where Plaintiff was staying and would be taken to the airport. She stayed on and was asked to leave.

   h. During Plaintiff's weekend stay in California, Luong attempted to arrange meetings between Plaintiff and other Vietnamese community groups, with Luong as in-between. Plaintiff refused.

13. All throughout the FB acquaintanceship, Luong posted extreme compliments and flattery about Plaintiff and Plaintiff's background.

14. Subsequently to Plaintiff's September stay in California, Luong approached Plaintiff for help with organizing a show to raise funds for her family in Vietnam. Plaintiff agreed to help.

15. As Luong prepared for the show, Plaintiff observed Luong's activities and found them to be incompatible with Plaintiff's. Plaintiff posted explanations for the incompatibility. Plaintiff also learned that Luong would collaborate with Nguyen, another incompatibility. Plaintiff also felt that Luong's use of self-pity to solicit donations for her charity shows was improper, and that such self-pity was unhealthy and exploitive. Plaintiff informed Luong that she would disconnect all contacts and terminate the acquaintanceship.

16. Throughout the interactions, Luong also attempted to solicit Plaintiff's comments regarding opposing the Vietnamese communist government, its educational system, criticism of the Vietnamese American communities, and personal attacks upon certain community members and practices.

## V.    DEFAMATION

17. As of December 8, 2017 and repetitively thereafter, Defendants Luong and Nguyen negligently, knowingly, maliciously, and/or intentionally posted the following false information about Plaintiff, in reckless disregard of falsehood. There were several defamatory postings, repeating the falsehood. Luong either published such defamation herself or explicitly attributed the false information to Nguyen, who confirmed that she was the source of such defamatory information/ Nguyen also published such defamatory information in her posting of comments and on her FB account. Each of the two individual Defendants independently published such falsehood, and/or each of them described their phone and/or internet conversations about Plaintiff with others who participated in the defamation:

   a. That Plaintiff was disbarred and her law licensed was revoked. FALSE
   b. That Plaintiff was fired from her University job because of the disbarment. FALSE

c. That Plaintiff misrepresented, lied, and defrauded the public that she was a law professor. FALSE

d. That Plaintiff committed financial fraud concerning credit card and/or phone bills. FALSE

e. That via FB Messenger, Plaintiff committed the crime of "assault" against Defendant Luong. FALSE

f. That Plaintiff is mentally unstable, has mental diseases and personality disorders. FALSE.

g. That Plaintiff was/is a pauper living at or below poverty level, has had to stand in line for public food assistance, has broken the line and taken other people's food causing disturbance and public attention. FALSE

h. Yet, despite such poverty and public dependence, Plaintiff bragged and falsely represented her knowledge and credentials in order to defraud the public. FALSE.

i. That Plaintiff is married to an 80-year-old man and the two plot a militarily coup to overthrow the Vietnamese Communist government by leading an army of retirees from the United States. (Such act was a violation of U.S. law and hence criminal conduct.) FALSE

j. That Plaintiff was immoral, corrupt, and pathologically engaged in conduct of moral turbitude. FALSE

k. That Plaintiff wanted to be Secretary of State in the Hillary Clinton's Administration. FALSE

l. That Plaintiff got on a community stage at the banquet to accuse Nguyen of defaming Plaintiff. FALSE.

m. That Plaintiff was thirsty and deprived of love and therefore developed personality disorders. FALSE.

n. That Plaintiff was unemployed and jobless. FALSE.

o. That Plaintiff exploited Luong's labor in California. FALSE.

p. That Plaintiff lied. FALSE.

q. That Plaintiff was shunned by her community. FALSE

r. That Plaintiff hallucinated and falsely cried attempted rape by labor workers at her house. FALSE

s. That Plaintiff harassed Luong, obsessively intruded and sought Luong's attention, and initiated conversations with Luong via FB Messenger without letting Luong go. FALSE.

**VI.**
**CONTINUOUS DEFAMATION AND DEROGATORY EFFECT**

18. Defendants made these defamatory statements knowing that they would be repeated to others such that the defamation would multiply, be republished and redistributed, to the continuous and increasing injury of Plaintiff.

19. Defendants published such defamation on FB via the internet, knowing that the injury could occur worldwide.

20. Plaintiff has suffered substantial injury to her person, her family relations, her profession, and her business as a result of Defendant's defamatory statements.

**VII.**
**DEFAMATION PER SE**

**21.** Since the defamation was directed at Plaintiff's competence and status as a licensed professional and injured her livelihood, the defamation constitutes defamation per se.

**22.** At common law, falsely imputing a mental disease and illness to Plaintiff, and falsely accusing Plaintiff of fraud or criminal conduct constitute defamation per se.

**VIII.**
**CONDITIONS PRECEDENT AND RECURRING/NEW CAUSES OF ACTION CREATED BY REPETITION AND CONTINUOUS POSTINGS OF DEFAMATION**

23. Plaintiff has performed all condition precedents necessary to maintain her causes of action, and has been frustrated by Defendants' action/non-action.

24. Specifically, Plaintiff has served upon each Defendant written requests identifying the defamation, in order for Defendants to retract, clarify, or correct their defamatory statements, in accordance with the Texas Defamation Mitigation Act. Plaintiff's efforts have been futile and her mitigation notices ignored by the Defendants. Instead, the individual Defendants have continued to make new FB posts, repeating and intensifying the defamation and adding to their online harassment of Plaintiff.

**IX.**
**INTERNET HARASSMENT VIA THE USE OF FIGHTING WORDS, VIOLENCE-INDUCED POSTINGS AND LANGUAGE**

**25.** On FB, the individual Defendants created a derogatory nickname, calling Plaintiff "Oracle," or "Female Saint," which in the Vietnamese culture, has the blasphemy effect of inducing and invoking hatred and extreme ridicule. Defendant Luong also posted violent images and used violence-induced language and description such as "riffle shooting," "spreading/inseminating

feces," "broad/bitch/fool/imbecile," "cutting flesh and mutilating body," "smashing/pounding on the fish head," "throwing stones," "mass mobilization/agitation," "chasing with butcher knives/battle blades," "tearing flesh by gigantic medieval hawks," Such repetitive assaultive language and bloody, battling images can lead to violent and depressive reaction in readers and victims, as well as subjecting victims to severe public contempt leading to peace-disturbing conduct and inciting mass reaction.

**X.**

**OUTRAGEOUS CONDUCT/INFLICTION OF EMOTIONAL DISTRESS, INVASION OF PRIVACY, INTERFERENCE WITH FAMILY AND BUSINESS RELATIONS**

26. Defendants' conduct described above is purposeful, outrageous, and malicious, aiming to hurt emotionally as well as physically by creating shock and traumatic effect upon Plaintiff, in order to destroy her health and peace of mind, actionable at common law.

27. Plaintiff is a private citizen and Defendants' defamation intrudes upon her privacy, putting her under false light in the public domain.

28. At the time of the defamation, Defendants knew or should have known via information on FB that Plaintiff has been caregiver to her aging and ailing parents, having to travel long hours and distance between two residences to supervise caregiving, and to monitor and respond to the status of her parents who were very ill with serious diseases and could no longer help themselves. Defendants knew that Plaintiff faced demanding elderly health-related responsibilities while maintaining her livelihood and professional status. Defendant Nguyen, in particular, attempted to participate in such elderly home care, did inject herself into such home care, exploited Plaintiff's family situation, and caused irreparable harm. Defendants' shocking conduct described above has brutally created so much distress upon Plaintiff that it substantially interferes with Plaintiff's parental caregiving duties and, consequently, has also jeopardized the health of her parents, proximately causing and accelerating their deterioration. As of this filing, Plaintiff's mother has passed on due to septic infection and other infections. The published and circulated derogatory falsehoods have also jeopardized Plaintiff's professional relations in her community.

**XI.**

**CONSPIRACY, AIDING, ABETTING, AND ACTING IN CONCERT**

29. Their FB postings and comments show undisputedly that the individual Defendants targeted Plaintiff for harassment and defamation and other tortious conduct. Acting together in pre-mediated planning and aiding each other, the individual Defendants sought to invoke, and did

invoke, invite, and bring about the participation of other FB commenters to take part in the harassment and defamation.

## XII.
## OBSTRUCTION OF PROSECUTION; DESTRUCTION OF EVIDENCE

30. Upon information and belief, during the fall-winter of 2018, Defendant Nguyen was enjoined by the Texas District Court from posting derogatory and harmful material against a Houston resident. Defendant Luong also participated and supported Nguyen's action. Following this legal event, Luong removed all of her defamatory concerning Plaintiff from her FB display. All such deletions after continuous postings for almost a year constitute destruction of evidence of defamation and tortious conduct.

31. Prior to such deletions, Luong had acknowledged receipt of Plaintiff's "mitigation" notices requesting correction and retraction, and that she refused to take mitigation action.

32. After receiving Plaintiff's "mitigation" requests, Luong deleted and destroyed her complimentary postings of Plaintiff. These complimentary postings were made during the time Luong still pursued Plaintiff for exploitation and personal gain. These complimentary postings showed that Luong contradicted herself, and her own postings proved her knowledge that her subsequently defamatory postings of Plaintiff were false. Thus, Luong deliberately and purposefully destroyed evidence of her tortious conduct.

33. Nguyen also destroyed her defamatory and harassing postings concerning Plaintiff after exposing them substantially to the FB reader community, and after she had ignored Plaintiff's "mitigation" notices. Her destruction of evidence was made after Nguyen had refused to take mitigation action to correct, clarify, or retract her defamatory postings.

## XIII.
## CAUSE OF ACTION AGAINST FB FOR BREACH OF WARRANTY, CONTRACT AND COMMUNITY GUIDELINES ESTABLISHED BY THE CORPORATION IN ORDER TO INDUCE CONSUMER MEMBERSHIP AND USAGE

**34.** The individual Defendants' defamation and harassment violate several sections and principles of FB's Community Guidelines against cyberbullying and harassment.

**35.** Plaintiff has requested corrective action by FB by filing reports and delivery written notices of harm to FB headquarters.

**36.** FB has chosen to take no remedial action, letting the defamation continue and be repeated over months and months during the first year of the defamation. The tortious postings remained online

and exposed to the Vietnamese reading public worldwide until the individual Defendants exposed of them, after damage had substantially been done.

**37.** The non-action and indifference exhibited by FB constitutes a breach by FB of its own established Community Standards. By inaction, FB in fact has condoned the individual Defendants' behaviors, encouraged them, and given them carte-blanche tacit approval, causing pain and suffering, injury and damages to Plaintiff and her family.

**38.** Paradoxically, after the individual Defendants' numerous publications of defamation against Plaintiff, FB began to single out Plaintiff by removing member benefits and imposing arbitrary prohibition and restriction upon Plaintiff's postings, without any explanation or justification. Plaintiff has appealed, and as of this filing, FB has not responded. FB also inactivated Plaintiff's business account, citing as reason that it is a fake account or an account that pretends to be somebody else despite Plaintiff's submission of ID. FB thus condones harassment by applying harassing measures upon the victim while protecting the defamers. FB's singling-out Plaintiff constitutes harassment itself.

## XIV.
## EXEMPLARY/PUNITIVE DAMAGES

39. Plaintiff seeks all damages available at law or equity, including exemplary damages for cavalierly ignoring mitigation requests for correction and retraction, publishing with malice, bad faith, intentional and/or reckless disregard of falsehood, continuing the defamation postings/repostings repetitively, using fighting words and invoking violence, traumatizing, as well as subjecting Plaintiff to public ridicule, and finally obstructing lawsuit and destroying the textual evidence of defamation. The defamation was so cavalier that the falsehood can be proven by Defendants' own previous postings about Plaintiff.

## XV.
## JURY DEMAND

40. Plaintiff requests a jury for all factual triable issues.

## XVI.
## INJUNCTIVE RELIEF AND EX PARTE TEMPORARY RESTRAINING ORDER

41. Injunctive relief is necessary to prevent continuing defamation, disparagement and damage to Plaintiff's personal and business reputation and the performance of her caregiving duties owed to her surviving father.

42. TRO relief is to maintain the status quo and preventing continuing harm to Plaintiff.

43. The TRO movant must demonstrate a probable right to recovery and that no other remedy at law exists. The TRO movant does not have to prove certainty in prevailing at trial. The defamation committed against Plaintiff is clearly defamation per se, committed with malice, ill will, and reckless disregard of truths, and can be proven with facts arising out of postings and messenger record on FB. For example, Defendant Luong's contradictory postings praising and flattering Plaintiff prove the falsehood of her subsequently defamatory postings regarding Plaintiff.

44. Injunction and TRO ex parte are to prevent irreparable harm and to provide relief or remedy not otherwise available at law. For the whole year of 2018, Plaintiff suffered from anguish, trauma, pain and sufferings resulting from Defendants' action. She had to spend substantial time writing notices and requesting correction, clarification, and retraction from Defendants in order to protect her person. Her well-being was severely affected and damaged such that she could not spend sufficient time to stay with, care for, supervise, and respond to the home care needs of her bedridden and feeble parents. The passing of Plaintiff's mother has happened. Defendants should not be allowed to continue to commit or repeat their speech torts, inflict harm, affect the health and life of Plaintiff and her father by defamation that creates anguish and sufferings upon her as her father's caregiver. Plaintiff's abandonment or closing of her FB account or using the "blocking" feature of FB is not the solution, as the damage on her person and livelihood has occurred, while Defendants' repeated defamation would just remain unknown to Plaintiff. Without TRO and/or injunctive relief, The detrimental effect on her personal and professional reputation and tortious interference with her relations would just continue behind her back. There is no other adequate remedy at law to prevent and remedy such horrid effect of Defendants' bad acts, and any resulting damage would be irreversible and irreparable.

45. Accordingly, TRO and injunction are the only remedies that would enable the Court to act immediately to prevent, not only the individual Defendants' efforts at inciting others to join their defamation, but also the ongoing and/or repetition of the defamation, thereby eliminating any detrimental effect upon Plaintiff's life and that of her loved ones who must depend on her.

## XVI
## PRAYER FOR RELIEF

Plaintiff requests injunctive relief, TRO ex parte, and seeks damages, together with all pre- and post-judgement interest thereon, reasonable attorneys' fees to trial and appeal, expenses, court fees and associated costs, as well as any other relief to which Plaintiff is entitled in equity or at law.

Respectfully Submitted,

/signature/

Wendy Duong
3426 East Cedar Hollow Drive, Pearland TX 77584
713 436 6890; wduong2011@yahoo.com